NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MICHAEL HICKS, | : | |
| Petitioner | : | Civ. No. 21-10831 (RMB) |
| v. | : | **OPINION** |
| LAMINE N'DIAYE, | : | |
| Respondent | : | |

BUMB, United States District Judge

Petitioner Michael Hicks, a prisoner at the Federal Correctional Institution in Fort Dix, New Jersey, is proceeding pro se with a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1.) The petition challenges his loss of good time credits and privileges as well as a $96.00 monetary fine imposed after a Discipline Hearing Officer ("DHO") found that he possessed a cell phone. (See id.) Respondent filed an answer to the petition on July 12, 2021. (Answer, ECF No. 5.) Petitioner has not replied. The Court will decide the petition on the briefs without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court denies the petition.

I.   BACKGROUND

Petitioner is serving a 240-month sentence imposed on July 3, 2014 in the United States District Court for the Southern District of Indiana for conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(A)(1), 846, 851. (Dobovich[1] Decl. Ex. 1 Attach. A, at 4,[2] ECF No. 5-3.) If Petitioner receives all good conduct time currently available to him, his projected release date is July 20, 2029. (Id. at 3.)

On August 6, 2019, Officer H. Smith at FCC Terre Haute issued an incident report charging Petitioner with possession of a hazardous tool (a cell phone) in violation of BOP Disciplinary Code 108.[3] (Dobovich Decl. Ex. 1 Attach. E, at 23, ECF No. 5-3.) The incident report stated:

> On 8-6-19 at approximately 3:15 pm I walked onto S071 range and observed inmate Hicks,

---

[1] Corrie Dobovich is a Legal Assistant employed by the Federal Bureau of Prisons ("BOP") who has access to BOP records kept in the ordinary course of business. (Dobovich Decl. ¶ 1, ECF No. 5-2.)

[2] For pincites to Exhibit 1 of the Dobovich Declaration, the Court relies on the pagination generated by CM/ECF.

3 Code 108 applies to "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (Table 1).

2

> Michael #IO 169-028 sitting in a chair near his bed assignment S07-0 I 6U holding a cellular phone in his right hand. When he saw me, he quickly turned away from me [and] attempted to conceal the cellular phone and charging cord. I took possession of the phone and told him to give me his identification card. I turned momentarily to speak with another inmate at which time Hicks evaded me by leaving S07 and not giving me his ID card. The cellular phone he was in possession of is black MOTO cellular phone model #XT1 1765. Serial Number/IM 1#354135092217062 which contained sim card #8901260042926242035F. At count time, Counselor Jensen and myself went to S07 and positively made identification of inmate Hicks, Michael.

(Id.)

BOP staff gave Petitioner a copy of the incident report the following day and conducted an investigation. (Id. at 20.) During the investigation, BOP staff advised Petitioner of his rights, including his right to remain silent throughout all stages of the process. (Id. at 24.) The investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for further processing. (Id.)

The UDC convened for a hearing on August 10, 2019. (Id. at 23.) Petitioner did not provide any statements or comments during the hearing. (Id.) At the conclusion of the hearing, the UDC referred the incident report to the DOH due to the severity of the charge and recommended sanctions. (Id.)

BOP staff provided Petitioner a Notice of Discipline Hearing Before the DHO and advised him of his rights. (Id. at 34-35.)

3

Petitioner declined to have a staff representative present and asked to call three inmates witnesses: Frank Thomas, Harold Hill, and Roger Strong. (Id. at 35.)

The DHO noted that Petitioner's requested witnesses were located in a separate facility on the FCC Terre Haute complex, and, therefore, BOP staff obtained witness statements as opposed to live testimony. (Id. at 20.) When BOP staff notified the witnesses that Petitioner requested that they provide a statement on Petitioner's behalf for his upcoming DHO hearing, Thomas indicated that "I was in my cell." (Id. at 29.) Likewise, Hill and Strong indicated that they had no information or knowledge concerning the incident. (Id. at 30–31.)

The DHO hearing took place on August 29, 2019. (Id. at 20.) The DHO read Petitioner his rights and afforded him an opportunity to provide a statement on his behalf. (Id.) Petitioner stated, "it wasn't me," "I was in the TV room," and "It's not my phone." (Id.) Petitioner did not proffer any documentary evidence on his own behalf. (See id.)

The DHO found that the act was committed as charged. (Id.) In so finding, the DHO considered: (i) the reporting officer's first-hand account of the incident as stated in the incident report; (ii) the photo evidence of the recovered cell phone; (iii) Petitioner's disciplinary history of engaging in similar misconduct; (iv) a memo from a second staff member indicating that

4

he assisted the reporting officer in identifying and locating Petitioner once he left his cell area after the phone was discovered; (v) the written witness statements from Thomas, Hill, and Strong; (vi) Petitioner's lack of a defense during the investigation process and UDC hearing; and (vii) Petitioner's own statement and denial of the charge. (Id. at 21.) The DHO explained that he did not find Petitioner's defense credible because Petitioner failed to make a consistent statement of his account of events throughout the disciplinary process and the purported witnesses on his behalf had no exculpatory information. (Id.) The DHO explained that he gave greater weight to the incident report, photo evidence, Petitioner's disciplinary history, and to the supporting memorandum provided by the second staff member. (Id.)

Accordingly, the DHO imposed the following sanctions: (i) disallowance of forty-one days of Good Conduct Time; (ii) forfeiture of 180 days of non-vested Good Conduct Time; (iii) loss of 180 days of telephone and commissary privileges; and (iv) imposition of a $96.00 fine. (Id. at 22.)

Respondent concedes that Petitioner properly exhausted the Administrative Remedy process. (Answer at 5.)

5

II. DISCUSSION

    A.   Applicable Standards

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . .
>
> . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
>    . . .
>
>    (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(a), (c).

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." Id. at 144 (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)). Due Process claims based on sanctions that do not affect the execution of a prisoner's sentence are not cognizable under 28 U.S.C. § 2241. Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007).

6

The Supreme Court has defined the due process protections required when a prison disciplinary hearing may result in loss of good conduct time. See Wolff, 418 U.S. at 546-71. Those protections include: (i) the right to appear before an impartial decision-making body; (ii) twenty-four hour advance written notice of the charges; (iii) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (iv) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and (v) a written decision by the fact-finder, including the evidence relied on and the reason for the disciplinary action. Id.

Further, the DHO's decision must be supported by "some evidence." Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Id. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)). Determining whether the standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455. Instead, courts should determine "whether there is any evidence in the record that

7

could support the conclusion reached by the disciplinary board." Id. at 455-56.

The BOP has substantially adopted and in some instances gone beyond these due process requirements by promulgating regulations governing its disciplinary procedures. Frankenberry v. Williams, 677 F. Supp. 793, 796 (M.D. Pa. 1988) aff'd, 860 F.2d 1074 (3d Cir. 1988); 28 C.F.R. §§ 541.1 to 541.8. If prison staff have reason to believe that an inmate has committed a prohibited act, staff must prepare an incident report and refer it for investigation. § 541.5(a)-(b). The incident report must "describ[e] the incident and the prohibited act(s) [the inmate] is charged with committing." § 541.5(a). After the inmate receives the incident report, a staff member will investigate the incident and inform the inmate of his rights. § 541.5(b).

After the investigation, the incident report is referred to a Unit Disciplinary Committee ("UDC") for an initial hearing. § 541.7. If an inmate is charged with a Greatest or High severity prohibited act, the UDC will automatically refer the incident report to the DHO for further review and advise the inmate of his rights at the DHO hearing. 28 C.F.R. § 541.7(a)(4), (g). The Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c).

If requested, the Warden must provide an inmate with a staff member to represent him at the DHO hearing. 28 C.F.R. § 541.8(d).

8

An inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e). An inmate is entitled to make a statement and present documentary evidence. 28 C.F.R. § 541.8(f). An inmate has the right to submit names of requested witnesses and have them called to testify. 28 C.F.R. § 541.8(f). The DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. 28 C.F.R. § 541.8(f)(2)-(3). The DHO may dismiss any charge or find a prohibited act was committed, and impose any available sanction for the act. 28 C.F.R. § 541.8(a). The decision of the DHO must be based on "at least some facts", and if there is conflicting evidence, it must be based on the "greater weight of the evidence." 28 C.F.R. § 541.8(f). Finally, the DHO must prepare a record of the proceedings, which includes the DHO's decision, the evidence relied on, the sanction imposed, and the reason for the sanction. 28 C.F.R. § 541.8(h).

The harmless error analysis applies to cases concerning prison disciplinary proceedings. Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992) ("'If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a

9

harmless error in adjudicating the violation.'") (quoting <u>Powell v. Coughlin</u>, 953 F.2d 744, 750 (2d Cir. 1991) (citation omitted)).

B.   <u>Ground One of the Petition</u>

In his first ground for relief, Petitioner argues that "[t]he minimum requirements of Due Process in violation of 28 C.F.R. § 541 . . . was not met in the DHO finding on the greater weight of the evidence, in the presence of conflicting evidence." (Pet. at 7.) In particular, Petitioner notes that the Incident Report states that the phone that the reporting officer confiscated was black, but Petitioner contends the photo evidence depicts a gold phone. (<u>Id.</u>)

As noted above, due process merely requires that the findings of the prison disciplinary board are supported by "some evidence" in the record. <u>Hill</u>, 472 U.S. at 455. Here, there is ample evidence to support the finding that Petitioner possessed a cellphone. For instance, the record includes, among other things: (i) the reporting officer's first-hand account of the incident as stated in the incident report; (ii) the photo evidence of the recovered cell phone; (iii) Petitioner's disciplinary history of engaging in similar misconduct; and (iv) a memo from a second staff member indicating that he assisted the reporting officer in identifying and locating Petitioner once he left his cell area after the phone was discovered. (Dobovich Decl. Ex. 1 Attach. E., at 21.) Accordingly, the DHO's decision does not violate due process.

Under 28 C.F.R. § 541.8(f), however, if there is conflicting evidence, the DHO's decision must be based on the "greater weight of the evidence."[4] In this case, the written decision reflects that the DHO considered the incident report and photo evidence, among other things, and the DHO found that Petitioner possessed the cell phone based on the greater weight of the evidence. (Dobovich Decl. Ex. 1 Attach. E., at 21.) Thus, the DHO's decision also satisfies the standard under Section 541.8(f) notwithstanding Petitioner's assertion of conflicting evidence, and the Court will deny Ground One. See, e.g., Lewis v. Warden Canaan USP, 644 F. App'x 153, 156 n.2 (3d Cir. 2016).

C.  Ground Two of the Petition

In his second ground for relief, Petitioner claims that "the minimum requirements of Due Process in violation of 28 C.F.R. § 541.7(c)" were not met because "the UDC hearing was held more than 5 days after a copy of the Incident Report was given to [him]." (Pet. at 7.) Specifically, Petitioner contends that "advanced

---

[4] In Henderson v. Carlson, the Third Circuit held that a district court erred when it failed to review the sufficiency of a DHO's finding under a more stringent BOP regulation then in effect. 812 F.2d 874, 879 (3d Cir. 1987). It appears that the Third Circuit has yet to decide whether the "greater weight of the evidence" standard under Section 541.8(f) is different from or more stringent than the "some evidence" standard delineated by the Supreme Court in Hill. Redding v. Holt, 252 F. App'x 488, 490 n.1 (3d Cir. 2007). Nonetheless, without clear guidance, and in an exercise of caution, the Court analyzes the DHO's decision under both standards.

11

written notice of the charge was given to [him] on August 7, 2019," but the "UDC hearing was not held until August 16, 2019." (Id.)

As an initial matter, neither due process nor Section 541.7(c) requires that a UDC hearing be held within five days after an incident report is issued. (See Wolff, 418 U.S. at 546-71; 28 C.F.R. § 541.7(c) (providing that "[t]he UDC will <u>ordinarily</u> review the incident report within five work days after it is issued") (emphasis added)). In any event, contrary to Petitioner's assertion that the UDC hearing was held on August 16, 2019, the record reflects that his UDC hearing occurred on August 10, 2019, three days after staff provided him a copy of the incident report. (See Dobovich Decl. Ex. 1 Attach. E, at 23 (noting the "Date and Time of Action" of the UDC proceedings as "8-10-19".)[5] Accordingly, Petitioner's argument is meritless, and the Court will deny Ground Two.

---

[5] The Court notes that the date referenced is handwritten and could conceivably be read as "8-16-19" instead. However, Petitioner clearly signed the "Inmate Rights at Discipline Hearing" form on August 10, 2019. (Dobovich Decl. Ex. 1 Attach. E, at 34.) As that form only applies to "an inmate charged with a violation of [BOP rules] <u>referred to the [DHO] for disposition</u>," and, as the UDC committee decides whether to refer a matter to the DHO, the Court is satisfied that the UDC committee convened on August 10, 2019 to review Petitioner's incident report. (See id. (emphasis added).)

12

IV. CONCLUSION

For the reasons discussed above, the Court denies the Petition for Writ of Habeas Corpus. An appropriate order follows.

Date: January 30, 2024

**RENÉE MARIE BUMB**
**United States District Judge**